IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| M99 STUDIOS, LLC, a California limited liability company,<br><br>    Plaintiff,<br><br>v.<br><br>UZIVERT, LLC, a Georgia limited liability company, SYMERE BYSIL WOODS, an individual, and AMINA DIOP, an individual.<br><br>    Defendants. | Case No. _____ |

## COMPLAINT AND JURY DEMAND

Plaintiff M99 Studios, LLC ("Plaintiff" or "M99"), by and through its undersigned counsel of record, states as follows for its Complaint against Uzivert, LLC ("Uzivert"), Symere Bysil Woods p/k/a Lil Uzi Vert ("Artist"), and Amina Diop ("Diop") (collectively, the "Defendants").

## PARTIES, JURISDICTION, VENUE

1. Plaintiff M99 Studios, LLC is a limited liability company formed and existing under the laws of the State of California. M99's single member is a citizen of the State of California.

2. Upon information and belief, Defendant Uzivert is a limited liability company formed and existing under the laws of the State of Georgia. Further, upon

1

information and belief, Uzivert conducts business within the State of Georgia and its registered agent, Artist, resides at 2675 Almshouse Lane, Atlanta, Georgia.

3. Upon information and belief, Artist is a resident of the State of Georgia and is the sole member of Uzivert.

4. Upon information and belief, Diop is a resident of the State of Georgia.

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) where this action is between citizens of different states and the amount in controversy exceeds $75,000.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and LR 3.1 (B)(1)(a), N.D. Ga. because, upon information and belief, all Defendants reside in this district and at least one Defendant resides in this division.

## GENERAL ALLEGATIONS

**Artist and M99's Working Relationship and Course of Dealing**

7. This matter arises out of the Defendants' failure and refusal to provide M99 with payments due and owing for services duly rendered to Artist related to live festival and tour performances.

8. M99 is a production services company specializing in music touring and event production. M99 regularly works with some of the biggest musical artists and brands in the world providing, without limitation, logistical support, music tour production and management, skilled personnel and crew, as well as designing and

developing innovative set and stage concepts such as custom set pieces and scenic set and stage elements. M99 also provides travel and tour support for its clients.

9. In short, M99 is a one-stop-shop for all things music touring and events.

10. Artist has maintained a long-standing relationship with M99 since the company's formation in 2017, with M99 providing services to Artist throughout the majority of his touring career.

11. Indeed, despite several changes in Artist's management, M99 has continued to work with Artist and was specifically requested by Artist when he started being managed by Diop in or about 2019.

12. Throughout their years of doing work together, Artist has relied heavily on M99 for all of his creative ideas, production, and staffing for all tours, shows and performances. Indeed, Artist regularly requested unrealistic designs and concepts with little to no timeline, trusting M99 to execute them flawlessly.

13. M99 was not just a production services company to Artist, but was also its fixer for all things related to his performances and tours.

14. For example, Uzivert and Artist regularly failed to maintain functioning credit cards or sufficient funds in Artist's travel account to book necessary travel for crew, forcing M99 to front all travel costs for Artist's tours and performances.

3

15. While Artist's account would work from time-to-time, his credit card would frequently be declined while on tour, making it impossible for M99 to ensure the safety and well-being of the crew without covering the expenses itself.

16. At all times relevant, Diop was aware of these issues and relied on M99 to provide Uzivert and Artist with interest-free loans, regularly taking advantage of M99's good will and financial support to run Artist's touring business.

17. Uzivert and Artist also regularly fell behind on M99's invoices leaving M99 in the unfortunate position of being forced to cover Artist's expenses for future shows and performances without being paid for past-due invoices. This created a cycle of cash flow issues for M99 and, when M99 would request payment for its services, it was met with excuses or promises that it would be paid at future dates that were frequently breached and pushed back.

18. Uzivert and Artist's behavior and way of conducting business has strained relationships with some of M99's biggest partners in the industry and has caused significant reputational damage with companies and vendors M99 has worked with for the past several years.

**Artist Fails and/or Refuses to Pay M99's Past Due Invoices**

19. As noted above and upon information and belief, Diop began managing Artist in or about 2019 and was the primary representative through whom all

business with M99 was conducted. Any requests from Artist regarding production, creative design, travel, or logistics were made on his behalf by Diop.

20. Accordingly, in or around January of 2019, Diop contacted M99 to solicit and hire M99 to continue providing production management and staffing services during Artist's live festival and tour performances. See (**Ex. 1**, 1/2/19 Emails Between Diop and M99).

21. Specifically, through Diop, Uzivert and/or Artist hired M99 to provide staffing, creative design, logistics, production management, and logistical support for the requested dates, events, and live performances. Once such services were rendered, M99 submitted invoices to Diop for approval and payment. See (**Ex. 2**, 8/11/23 to 8/14/23 Emails Re: Submission of Invoices).

22. This customary practice of contracting existed between Diop, Uzivert, Artist and M99 from 2019 through 2023. In 2023, however, Diop, Uzivert, and/or Artist ceased paying M99's invoices.

23. Specifically, in 2023, M99, at the request of Diop, rendered services to Uzivert and/or Artist during multiple live festival and tour performances (collectively, the "Performances"), which include, without limitation, the following:

| EVENT | DATES |
|---|---|
| Europe Tour | June 26, 2023 – July 10, 2023 |
| Roots Picnic Music Festival | June 2, 2023 – June 4, 2023 |
| Broccoli City Music Festival | July 14, 2023 – July 16, 2023 |
| Rolling Loud Music Festival in Miami, Florida | July 22, 2023 – July 24, 2023 |

5

24. M99 provided the contracted services in a timely and sufficient manner and invoiced for the same in accordance with the parties' customary practices and established course of dealing. M99 also provided detailed budgets to Diop, which were approved by Diop, prior to rendering the services.

25. There is no dispute that M99's services were used during and incorporated into the Performances at significant time, effort, and expense to M99 and that Uzivert and/or Artist fully benefited from those services.

26. Indeed, there is little doubt that Artist could have completed the Performances without the help of M99 as, consistent with past dealings, Artist would regularly use M99 to fulfill unrealistic production requests just hours before the scheduled Performances. For example, right before his Rolling Loud LA performance, Artist requested a bounce house, wooded crosses, and mannequins to be added to the show, all of which M99 was forced to procure, build, incorporate with other set pieces, and pay for with essentially zero prior notice.

27. Artist also demanded that M99 procure thirty (30) adult dancers to be on stage during his Rolling Loud Miami performance only hours before the show was scheduled to begin. M99 managed to fulfill this request, along with countless other last-minute demands all at significant time, effort and expense.

28. M99's performance and services to Uzivert, Artist, and Diop have, at all times, remained completely unchallenged despite their failure and refusal to pay M99's invoices (attached as **Ex. 3**).

29. This is a clear and ongoing breach of the parties' agreement.

30. Indeed despite multiple confirmations and express promises by Artist's management (i.e., Diop) that M99 will be paid in full for all work completed, to date, Uzivert and/or Artist remain indebted to M99 in an amount no less than $533,499.81 plus statutory interest.

31. Ultimately, after providing additional services to Artist in relation to Artist's Australian tour, which was produced by M99 in full, M99 informed Diop that M99 could not continue to work with Artist or produce the Australian tour unless and until Uzivert and/or Artist came current on over $700,000 worth of past due invoices.

32. Diop insisted that M99 continue with the work, despite not being paid, and made a single $100,000 progress payment under the express promise that the remainder of M99's invoices would paid as soon as the Australian tour was completed.

33. After the Australia tour, M99 ceased doing work for Artist and decided not to bill for the Australian services in hopes of parting ways amicably and assisting Uzivert and/or Artist with paying M99's invoices related to the Performances. As a

courtesy, M99 also did not invoice Uzivert and/or Artist for a cancelled show in Phoenix and an NBA 2k event that M99 provided services for.

34. After parting ways, M99 continued to follow up with Diop regarding the outstanding invoices. Diop consistently promised that all invoices would be paid, acknowledging that the work was complete and satisfactory and assuring M99 that everyone involved was aware that the money was owed and needed to be paid.

35. M99 had multiple calls with Diop and, on or about March 18, 2024, Diop stated that Uzivert and/or Artist were just waiting for Artist to receive his 2024 album advance before paying M99's invoices. One again, Diop did not state any objections to M99's invoices and assured M99 that it would be paid in full.

35. However, upon information and belief, M99 reasonably believes that Artist actually received his album advance, which Diop would be fully aware of, prior to her conversation with M99 on or about March 18.

36. For the foregoing reasons, Uzivert and/or Artist are in clear and ongoing breach of their agreement with M99 which has caused M99 to incur, and continue to incur, damages in an amount in excess of $75,000 but in no event less than $533,499.81 for work and/or services rendered to Artist related to the Performances.

37. Furthermore, to the extent Uzivert and/or Artist aver that Diop lacked the actual or apparent authority to contract with M99 related to the invoices and

Performances, M99 seeks to hold Diop personally responsible for hiring M99 to complete the contracted-for work.

## COUNT I – BREACH OF CONTRACT
*Against Defendants Uzivert and/or Artist*

38. M99 incorporates by reference the preceding factual allegations as though fully stated herein.

39. By way of the agreement entered into by Artist's authorized representative (i.e. Diop), M99 agreed to provide Artist with production management and staffing services for the Performances in return for payment of its invoices.

40. Uzivert and/or Artist were bound by the contractual obligations created by their authorized representative and/or agent, Diop.[1]

41. In accordance with the parties' agreement, M99 provided production management and staffing services for the Performances and submitted its invoices for payment pursuant to its customary practice and established course of dealing[2] with Defendants.

---

[1] "Apparent authority allows third parties to bind a principal to agent's acts based on the principal's conduct reasonably construed by third parties who innocently rely thereon." *Synergy Worldwide, Inc. v. Long, Haymes, Carr, Inc.*, 44 F. Supp. 2d 1348, 1355 (N.D. Ga. 1998).

[2] See *Williams v. Corp. of Mercer Univ.*, 542 F. Supp. 3d 1366, 1377 (M.D. Ga. 2021) (noting that parties' "previous course of dealings … in exchange [for] payment … could plausibly give rise to an implied contract under Georgia law") (quoting *Davidson v. Maraj*, 609 F. App'x 994, 998-99 (11th Cir. 2015).

42. Uzivert and/or Artist breached their agreement with M99 by failing to make any payments toward M99's outstanding invoices. See **Ex. 3**.

43. As a direct and proximate result of Uzivert's and/or Artist's breach of contract, M99 has suffered and will continue to suffer damages in an amount to be proven at trial, but no less than $533,499.81 plus statutory interest.

WHEREFORE, M99 respectfully requests that this Honorable Court enter judgment in its favor and against Uzivert and/or Artist in an amount to be determined at trial, but no less than $533,499.81, plus all applicable late fees and statutory interest; award M99 its attorneys' fees and costs; and award M99 punitive and/or exemplary damages together with any such further or other relief as may be deemed just and proper.

## COUNT II – UNJUST ENRICHMENT
*Against Defendants Uzivert and/or Artist*

44. M99 incorporates by reference the preceding factual allegations as though fully stated herein.

45. By providing the production management and staffing services as described in its invoices and as contemplated in the detailed budgets provided to Artist and Diop, M99 conferred significant benefits upon Uzivert and/or Artist.

46. Despite its numerous requests for payment of the outstanding invoices, at no point have Uzivert and/or Artist compensated M99 for the services it provided despite retaining the full benefit of the same.

47. M99 also conferred a significant benefit upon Uzivert and/or Artist for work related to the Australia tour, cancelled show in Phoenix, and NBA 2K event.

48. There is no reason that M99 should not be compensated for the benefits it has conferred on Uzivert and/or Artist.

49. As such, and by failing and/or refusing to compensate M99 for the services it provided, Uzivert and/or Artist have been unjustly enriched to the detriment of M99.

50. The Court is empowered to provide equitable remedies, which are warranted in this matter to cure the unjust enrichment of Uzivert and/or Artist.

51. Unquestionably, it would be inequitable, unjust, and unfair under the circumstances to allow Uzivert and/or Artist to retain the benefit of M99's work and services without payment for the same.

WHEREFORE, M99 respectfully requests that this Honorable Court enter judgment in its favor and against Uzivert and/or Artist in an amount to be determined at trial, but no less than $533,499.81, plus all applicable late fees and statutory interest; award M99 its attorneys' fees and costs; and award M99 punitive and/or exemplary damages together with any such further or other relief as may be deemed just and proper.

### COUNT III – PROMISSORY ESTOPPEL
*Against Defendants Uzivert and/or Artist*

52. M99 incorporates by reference the preceding factual allegations as though fully stated herein.

53. Through Diop and other members of Artist's management team, Uzivert and/or Artist made clear and definite promises that M99 would be paid for its production management and staffing services.

54. Uzivert and/or Artist expected or reasonably should have expected that these aforementioned representations and promises would induce action on M99's part including, without limitation, M99 continuing to render services to Uzivert and/or Artist in multiple other ventures such as Artist's international tours and festival performances.

55. As a result of the aforementioned representations and promises, M99 expended significant time, resources, effort, and expense to provide the production management and staffing services relative to and during the Performances as well as multiple other performative ventures including, without limitation, Artist's Australian tour.

56. As a result of Uzivert's and/or Artist's failure to pay M99 for the services it rendered, M99 incurred significant damages including the amounts stated in M99's outstanding invoices as well as amounts invested in supporting Artist in other tours and festival performances.

57. Injustice can only be avoided by requiring Uzivert and/or Artist to pay for the damages caused to M99 as a result of the promises made, relied upon, and unfulfilled.

WHEREFORE, M99 respectfully requests that this Honorable Court enter judgment in its favor and against Uzivert and/or Artist in an amount to be determined at trial, but no less than $533,499.81, plus all applicable late fees and statutory interest; award M99 its attorneys' fees and costs; and award M99 punitive and/or exemplary damages together with any such further or other relief as may be deemed just and proper.

## COUNT IV – BREACH OF CONTRACT
*Against Defendant Diop*

(In the alternative to Count I)

58. M99 incorporates by reference the preceding factual allegations as though fully stated herein.

59. To the extent that Uzivert and/or Artist aver that Diop lacked actual or apparent authority to enter into an agreement with M99 on their behalf, M99 alternatively seeks to hold Diop personally liable for breach of contract.

60. "Under Georgia law, an agent can be held individually liable apart from [her] principal for [her] own tortious acts and for undertakings exceeding the scope of her authority."[3]

61. Additionally, depending upon the facts, circumstances and understanding of the parties, a contract may exist impliedly with an agent in her individual capacity.[4]

62. Diop solicited and created the agreement under which M99 was to provide production management and staffing services to Artist in exchange for payment.

63. In accordance with the agreement, M99 indeed provided production management and staffing services pursuant to the terms and rates agreed upon with Diop.

64. To be sure, throughout the provision of its services, Diop served as M99's primary point of contact and M99 submitted its budgets, plans and invoices to Diop for approval and payment pursuant to its customary practices and established course of dealing dating back to 2019. See **Ex. 1 & 2**.

---

[3] See *Oglethorpe Realty Co., Inc. v. Hazzard*, 172 Ga. App. 98, 99 (1984) (citing OCGA §§ 10-6-84, 10-6-85).
[4] See *Thompson v. Floyd*, 310 Ga. App. 674, 679 (2011).

65. In the event that no valid or enforceable agreement existed between M99 and Uzivert and/or Artist, Diop is personally liable for breach of contract where M99 was never paid for its bargained-for services.

66. As a direct and proximate result of Diop's breach of contract, M99 has suffered and will continue to suffer damages in an amount to be proven at trial, but no less than $533,499.81 plus late fees and statutory interest.

WHEREFORE, in the event that its breach of contract claim (Count I) is not properly brought against Uzivert and/or Artist, M99 alternatively requests that this Honorable Court enter judgment in its favor and against Diop in an amount to be determined at trial, but no less than $533,499.81, plus all applicable late fees and statutory interest; award M99 its attorneys' fees and costs; and award M99 punitive and/or exemplary damages together with any such further or other relief as may be deemed just and proper.

## COUNT V – ATTORNEYS' FEES UNDER O.C.G.A. § 13-6-11

67. M99 incorporates by reference the preceding factual allegations as though fully stated herein.

68. Under Georgia law, "where the Defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense," expenses of litigation and attorneys' fees may be awarded by the jury. O.C.G.A. § 13-6-11.

69. Defendants' refusal to acknowledge their contractual obligations, refusal to remit payment for the services they required of M99, and subsequent refusal to even acknowledge Plaintiff's requests for payment constitute bad faith or stubborn litigiousness and have caused Plaintiff unnecessary trouble and expense, including but not limited to the trouble and expense of filing this suit.

WHEREFORE, M99 requests that judgment be entered in its favor and that M99 be awarded its reasonable and necessary attorneys' fees, costs, and expenses owing to Plaintiff's bad faith and stubborn litigiousness, in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

Based on the foregoing factual allegations and legal claims for relief, Plaintiff M99 respectfully requests trial by jury on its claims pleaded in this Complaint and further requests that this Court:

    A.    Enter Judgment against Defendants for any and all damages sustained by M99 arising from Defendants' wrongful conduct as described above;

    B.    Enter Judgment in favor of M99 and against Defendants in an amount to be determined at trial, but no less than $533,499.81, plus all applicable late fees and statutory interest (pre-judgment and post-judgment) on all sums permitted by law;

    C.    Award M99 its reasonable attorneys' fees and costs, and litigation expenses for having to prosecute this matter, as permitted by law;

D.   Award M99 punitive damages and/or exemplary damages as deemed appropriate; and

E.   Award M99 any such further or other relief as justice may require.

Respectfully submitted this 12th day of June, 2024.

By: */s/ Carey A. Miller*
Carey A. Miller
Georgia Bar No. 976240
**Robbins Alloy Belinfante Littlefield LLC**
500 14th Street NW
Atlanta, GA 30318
Telephone: (678) 701-9381
Facsimile: (404) 856-3255
cmiller@robbinsfirm.com

**Dickinson Wright PLLC**
Brandon L. Debus
(to be admitted *pro hac vice*)
Aleanna B. Siacon
(to be admitted *pro hac vice*)
2600 W. Big Beaver Rd., Ste. 300
Troy, MI 48084
Telephone: (248) 433-7674
Facsimile: (844) 670-6009
Bdebus@dickinson-wright.com
Asiacon@dickinson-wright.com
*Attorneys for Plaintiff*

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff M99 hereby demands a trial by jury for each issue so permitted by law and statute.

Respectfully submitted,

By: /s/ Carey A. Miller
Carey A. Miller
Ga. Bar No. 976240